## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSLYVANIA

| | | |
|---|---|---|
| **JOHN DOE** | : | **CIVIL ACTION LAW** |
| **Plaintiff** | : | |
| | : | **No.** |
| **VS.** | : | |
| | : | |
| **THE PENNSYLVANIA STATE** | : | |
| **UNIVERSITY, THE SECOND** | : | |
| **MILE, EDGEWATER** | : | |
| **PSYCHIATRIC CENTER,** | : | |
| **GERALD SANDUSKY, GRAHAM** | : | |
| **SPANIER, TIMOTHY CURLEY,** | : | |
| **GARY SCHULTZ, WENDELL** | : | |
| **COURTNEY, and THE LAW** | : | |
| **FIRM OF MCQUAIDE BLASKO** | : | |
| **and OTHERS AS YET UNNAMED:** | | |
| **DEFENDANTS,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| **Defendants** | : | |

## COMPLAINT

### <u>Introductory Statement</u>

1. This is a civil rights complaint accompanied by certain state tort claims seeking remedies for the unlawful actions of a state university and highly placed officials who represented and worked for the university, all of whom engaged in a cover-up that led to severe and permanent emotional and other injuries suffered by the plaintiff. Also included are certain supplemental state claims alleging

misconduct in violation of state law which caused the injuries suffered by the plaintiff.

## Jurisdiction and Venue

2. Jurisdiction is conferred on this court by 28 USC §1343 and 28 USC §1343 (a) (3) & (4), and the remedial statute 42 USC §1983.

3. A jury trial is demanded

4. This Court's supplemental jurisdiction as per 28 USC §1367(c) is also invoked here.

5. Plaintiff requests punitive damages against any individual defendants.

6. Venue is properly in the Middle District of Pennsylvania because all parties, witnesses, and evidence are common to Dauphin and Centre counties which are central Pennsylvania counties that lie within the jurisdiction of that court.

## Parties

7. Plaintiff John Doe was born April 4, 1990. He is a young black man who was born and raised in Dauphin County Pennsylvania. During the times complained of herein the plaintiff was 11- 15 years old.

8. Defendant, "The Pennsylvania State University" is an institution of higher learning located in Centre County Pennsylvania. It's official address is 201 Old Main, University Park, PA 16802.

2

9. Defendant, "The Second Mile" is a 501 (c) (3) corporation more commonly referred to as a "nonprofit corporation ". The Second Mile is located at 1402 S. Atherton Street, State College PA, 16801.

10. The defendant Gerald Sandusky is the individual who created "Second Mile". His home address was on Grandview Road in State College, PA 16801. He is currently incarcerated.

11. Defendants Graham Spanier, Timothy Curley, and Gary Schultz were top officials who worked for the Pennsylvania State University during the times complained of in this complaint.

12. Defendant McQuaide Blasko law firm, at all times complained of in the complaint and, even today, represents the Pennsylvania State University. The law firm's address is 811 University Drive, State College, Pennsylvania 16801.

13. The defendant Wendell Courtney, at the times complained of herein was an attorney who worked at McQuaide Blasko and specifically focused on PSU issues.

14. The defendant "Edgewater Psychiatric Center" is believed to be a 501(c) (3) nonprofit organization which provides counseling and other services to emotionally distraught persons. It is located in Harrisburg, Pennsylvania.

## Theories of Liability

15. Defendant PSU, Second Mile, the individual defendants, and Edgewater violated plaintiff's 14th Amendment substantive due process rights and his 4th Amendment rights to privacy, and to be free of assault at the hands of state officials. Pennsylvania and PSU has waived their 11th Amendment immunity by virtue of their state law liability for the injuries suffered by plaintiff through their acceptance of massive amounts of federal assistance. PSU and Second Mile are also liable under state law for sexual abuse, negligence, intentional infliction of emotional distress, and other as yet unidentified Pennsylvania tort violations. PSU and the individual defendants covered up and interfered with plaintiff's First Amendment right to access the court's, violated their duties to plaintiff in various ways facilitating his abuse, which was predictable, causing his exposure to the abuse he suffered at the hands of the defendant Sandusky.

16. Defendants Graham Spanier, Timothy Curley, Wendell Courtney, and Gary Schultz are liable to plaintiff in their individual capacities for the violation of plaintiff's 1st, 14th and 4th amendment rights pursuant to 42 USC §1983.

## Factual Recitations

17. Plaintiff John Doe was referred by Edgewater to Second Mile for a number of years to participate in "camps". These were promoted under the auspices of "Jerry Sandusky". Mr. Sandusky personally appeared at and was

4

involved in the administration and functions of the "camps". Sandusky used these camps to gain unlawful sexual access to minor boys.

18. The original referral of John Doe was done through Edgewater Psychiatric Center, hereinafter "Edgewater" located in Harrisburg Pennsylvania. John Doe's original referral was made on February 16, 2001.

19. John Doe, a young black male, was participating in a "Summer Challenge" under the supervision and management of "Second Mile" during the summer of 2005. At the time he was approximately 14 years old.

20. The Second Mile program was promoted and presented as a "Jerry Sandusky" program.

21. In the summer of 2005 plaintiff, along with some other boys, was taken to an Olympic size pool on the Penn State campus to enjoy certain swimming activities.

22. At the pool plaintiff met Jerry Sandusky. Sandusky came up to the plaintiff while he was in the water and Sandusky took plaintiff's genitals in his hand as he commented "what have we here" as he squeezed and manipulated John Doe's genitals.

23. Deeply confused and troubled, the plaintiff recoiled from what Sandusky said and did. He backed away, as rapidly as he could, telling Sandusky he didn't want anything like that.

24. Plaintiff was emotionally distraught and subsequently left Penn State and Second Mile, at the end of that week, as soon as he could, and returned to Harrisburg.

25. Plaintiff at this time had been supervised by and was living with his grandmother Jane Doe telling her that someone up there, meaning at PSU and Second Mile, had done something to him.

26. Plaintiff told his grandmother that something had been done to him but would not give her more details.

27. Plaintiff was deeply traumatized by what happened to him, leading him to question his own sexuality and causing great fear and making him afraid to come forward until recent events incurred a response.

28. Plaintiff has suffered deep upset and injury and has been permanently injured emotionally and has been traumatized by the abuse he has suffered at the hands of the defendants.

29. But for the breach of duties owed to him by the other defendants the plaintiff alleges he would not have been injured by Sandusky. The defendants' cover-ups and protections of Sandusky's and Penn State University's unlawful misconduct was and is the proximate cause of the injuries plaintiff suffered at Sandusky's hands.

30. The defendant Penn State University, hereinafter "PSU", and its policy makers Spanier, Curley, Schultz, McQuaide Blasko, Courtney, and among others (to include Pennsylvania's current Governor Tom Corbett and other trustees), knew of Sandusky's being a sexual predator prior to when Sandusky victimized the plaintiff. Policy makers for PSU had a duty to prevent the continuation of Sandusky's horrible misconduct but the defendant PSU and the other defendants instead ratified Sandusky's misconduct and supported him with money, services and access to its facilities where Sandusky assaulted the plaintiff in 2005 as he assaulted others.

31. The defendant Second Mile, like PSU, knew of Sandusky's abusive and unlawful misconduct and his use of Second Mile as a way to set up young boys and make them available so that he could molest them. Like PSU, officials at Second Mile knew of Sandusky's misconduct prior to the year 2000 and well before 2005. Nonetheless they allowed him to continue abusing children and participated in the cover-up of his unlawful activities all of which led to the unlawful abuse of the plaintiff by Sandusky.

32. The defendant "Edgewater" who, unlike Second Mile, refused to acknowledge or cooperate with plaintiff's pre-complaint investigation into these matters, upon information and belief, was aware of Sandusky's abuse yet referred

7

the plaintiff to Second Mile exposing him to abuse at the hands of the defendant Sandusky.

33. The defendant Sandusky, being supported by PSU and Second Mile, from the 1990s on through 2010 abused many innocent young boys. This misconduct was known to the defendants who used PSU as a cash cow to suck money and emoluments out of PSU to their own gain, and the plaintiff's great harm. Courtney even took the 5th Amendment before the Freeh investigator's knowing he could not do so in a civil proceeding. The cover-up continues, court efforts to protect the University notwithstanding,

34. Both PSU and Second Mile were aware for years that Sandusky was molesting young boys and acted affirmatively to protect Sandusky in violation of the rights of plaintiff and others.

35. All of the individual defendants knew that Sandusky was molesting young boys and using PSU and the Second Mile to facilitate his heinous and unlawful activities. For fear of ending the gravy train politically and financially the defendants allowed Sandusky to keep on molesting children.

36. All of the defendants permitted Sandusky to continue his molesting of young children unabated being concerned only with covering up his misconduct to protect what they believed was the all-important reputation and financial largess of

PSU and the Second Mile without any regard to protecting the young boys involved.

37. Upon information and belief the law firm McQuaide Blasko assisted in the cover-up and in particular the defendant Wendell Courtney participated in covering up of Sandusky's unlawful behavior because they, and especially Wendell Courtney, cared only about protecting the public reputation of Penn State and Second Mile as a cash cow for Wendell Courtney, McQuaide Blasko and others.

38. The law firm McQuaide Blasko and Wendell Courtney participated for years in covering up and protecting unlawful misconduct at PSU including the misconduct of Jerry Sandusky through political manipulation and other activities. Included were successful efforts to hide and suppress other instances of abuse of female employees and others.

39. All of these activities including the covering up of complaints by other PSU employees about misconduct were inexplicably covered up by court decisions deferential to PSU, particularly in federal court, and other actions led by defendants McQuaide Blasko and Wendell Courtney.

40. As has been pervasively proven by public events, actions to cover-up and protect the misconduct of PSU officials is a matter of great public concern notwithstanding the decisions of federal courts which have prevented moving ahead with complaints of other public employees who work for Penn State despite

their long-suffering and prodigious efforts to report incorrect wrongdoing and reverse the victimization from which they suffered.

41. In the case of John Doe it is strenuously alleged by him that the matters appertaining to him and any and all Court decisions notwithstanding, are matters of great public concern as are other front office abuses covering–up sexual complaints of female employees.

42. All of the above-named defendants unlawfully acted to cover-up and protect Penn State at the expense of the federally guaranteed rights of John Doe and others to prevent their access to the courts, to deter their relatives and caretakers from speaking up, and to protect Jerry Sandusky for other reasons despite their duties to the young children involved, which includes John Doe.

43. The actions of the defendants in this matter, all of whom were, and are, state actors, violated plaintiff John Doe's personal and familial rights to bodily integrity, emotional stability and security, and constitute arbitrary and capricious violations that shock the conscience, all of which violated John Doe's substantive due process rights.

44. The unlawful actions of the defendants in this matter violated plaintiff John Doe's Fourth Amendment rights to privacy and bodily integrity and his right not to be assaulted by public officials.

45. The actions taken by the above-named defendants clearly demonstrate their ratification and willingness to tolerate and or approve the misconduct of Jerry Sandusky and to manipulate the criminal justice system and the political connections of PSU resulting in a systematic cover-up of criminal activity at the expense of the plaintiff, and the inordinate access of PSU to favorable police and Court judges and decisions.

46. The actions of the above-named defendants including Wendell Courtney and McQuaide Blasko violated John Doe's First Amendment right to access the courts because it intentionally denied him, through their cover-up activities, the opportunity, via chilling his rights, to seek remedies for the abuses he suffered. PSU succeeded in chilling, deferring, and in all ways preventing the criminal and civil prosecution of matters of great public concern in the courts for years that were discernibly detrimental politically to PSU.

47. The above-named defendants had an affirmative duty to seek out individuals who may have been exposed to Jerry Sandusky's molesting activities and offer them help something they failed to do and in fact covered up Sandusky's unlawful behavior to protect Penn State, and their jobs and or fees.

48. The actions of the above-named defendants deprived plaintiff of his federally guaranteed rights and caused him egregious emotional and mental harm.

49. The above-named individual defendants cooperated in a civil conspiracy to permit the violation of the plaintiff's rights and to cover-up the unlawful activities of Jerry Sandusky, PSU, the Second Mile, and Edgewater.

## COUNT I

**John Doe against All Defendants for the Violation of his Substantive Due Process Rights, his First Amendment Rights, and his Fourth Amendment Rights**.

50. Paragraphs 1 through 49 above are incorporated herein by reference.

51. All the above-named defendants participated in the violation of the plaintiffs federally guaranteed rights to bodily integrity and his right to personal intimacy in an arbitrary and capricious, and in an outrageous and egregious manner.

52. The defendants knew that Sandusky (a defendant here also) was molesting young boys and they ratified his misconduct by supporting him and giving him continuing access for years to PSU and Second Mile facilities and programs. Indeed Sandusky molested the plaintiff by virtue of his permitted access to a large swimming pool on PSU property.

53. On information and belief, as early as the 1990s, Wendell Courtney and McQuaide Blasko knew of Sandusky's unlawful activities and they unlawfully covered up his misconduct in violation of a broader public interest, and victims' interests', to protect what they believed was a paramount interest namely the

protection of PSU's and Second Mile's reputation financial well being and public image. Courtney represented both the Second Mile and PSU and at various and sundry times advised the above-named individual defendants. He also helped cover-up and facilitate sexual harassment and other abuses of PSU female employees like Deborah Rearick hardly an "ordinary employment matter".

54. Courtney and McQuaide Blasko knew of other abuses occurring within the University's upper staff which they also covered up including the sexual harassment of female employees at PSU such as Deborah Rearick who is still being harassed.

55. The conduct of sexual harassment, and sexual abuse at a public university which is covered up by university officials, as here, is a matter of the greatest public interest as is amply demonstrated by the publicity and public interest over the past year.

56. Plaintiff has a federally guaranteed right under the Fourth Amendment to be free of assault by public officials and public officials facilitating sexual assaults upon him at the hands of other public official such as Sandusky as is the case with the above-named institutional and individual defendants.

57. Plaintiff had a First Amendment right to access the court's and to associate with other boys of his own age free of the misconduct and sexual predator tactics of Sandusky and the individual and institutional defendants who

ratified Sandusky's misconduct and provided Sandusky access through plaintiff's associations so that Sandusky could molest him. All of the defendants above are public employees and state actors by definition. Their wrongs are not ordinary employment matters devoid of matters of public interest.

58. All of the above-named defendants knew of Sandusky's misconduct, and ratified and permitted his misconduct to continue, prior to when Sandusky molested the plaintiff.

Wherefore plaintiff demands judgment of the above-named defendants for the deprivation and violation of his federally guaranteed rights under the 14th, 1st, and 4th, Amendments as remedied by 42 USC 1983 as aforestated, together with damages for pain and suffering, humiliation and embarrassment, emotional distress, punitive damages against the individual defendants, fees, costs, attorneys' fees, and such other relief as may be deemed appropriate.

Supplemental Claims

## Supplemental State Claims (42 USC 1367(c))

59. Paragraphs 1 through 58 above are incorporated hereinafter in all counts by reference.

60. This court has jurisdiction to hear supplemental claims under 28 USC §1367(c).

14

## COUNT II

### Plaintiff against PSU, and the Other Defendants for Premises Liability.

61. Paragraphs 1 through 60 above are incorporated herein by reference.

62. The defendant PSU, in cooperation with the above-named defendants granted Sandusky and Second Mile a license to enter upon and use the premises of PSU knowing he was a sexual predator of young boys. Indeed the plaintiff was molested by Sandusky at a PSU facility which the University made available for Sandusky's use.

63. PSU is liable to the plaintiff for making its premises and facilities available so that Sandusky could abuse young boys as he in fact abused plaintiff at a PSU swimming pool.

64. The above-named individual defendants, and the institutional defendant Second Mile, share in that liability.

Wherefore plaintiff demands judgment of the above-named defendants for the state tort of premises liability as aforestated together with damages for pain and suffering, humiliation and embarrassment, emotional distress, punitive damages against the individual defendants, fees, costs, attorneys' fees, and such other relief as may be deemed appropriate.

## COUNT III

### Plaintiff against Sandusky and the Other Defendants for Sexual and Simple Assault

65. Paragraphs 1 through 64 above are incorporated herein by reference.

66. On or about the summer of 2005 the defendant Jerry Sandusky assaulted the plaintiff by taking plaintiff's genitals in his hand said to him "what have we here".

67. Sandusky's assault upon the plaintiff was not welcomed by the plaintiff who immediately recoiled and told Sandusky his assault upon the plaintiff was not welcome.

68. Sandusky's assault, which was both sexual and simple, upon the plaintiff, was made possible by the support and ratification of the above-named defendants, all of whom share in the liability therefore.

Wherefore plaintiff demands judgment of the above-named defendants for the state tort of sexual assault and simple assault as aforestated together with damages for pain and suffering, humiliation and embarrassment, emotional distress, punitive damages against the individual defendants, fees, costs, attorneys' fees, and such other relief as may be deemed appropriate.

## COUNT IV

<u>Plaintiff against All Defendants for Negligence</u>

69. Paragraphs 1 through 68 above are incorporated herein by reference.

70. On or about the 1990s, but in any event no later than 1998, the defendants all new and/or learned that Sandusky was sexually molesting and abusing children.

71. The defendants had a duty to protect not only young boys, who had already been abused by Mr. Sandusky, but they had a duty and responsibility to do everything within their power to protect any future victims or potential victims from Sandusky's sexual predator activities.

72. The defendants all had a duty and responsibility to report Sandusky's abuses to authorities and to take action against him.

73. Not only did the defendants fail to take any affirmative or corrective action against Sandusky as was their duty to plaintiff and others similarly situated but they ratified and permitted Sandusky to maintain access to PSU and Second Mile facilities to permit his further abuse of children.

Wherefore plaintiff demands judgment of the above-named defendants for the state tort of negligence as aforestated together with damages for pain and suffering, humiliation and embarrassment, emotional distress, punitive damages

against the individual defendants, fees, costs, attorneys' fees, and such other relief as may be deemed appropriate.

## COUNT V

### Plaintiff against All Individual Person Defendants for Civil Conspiracy

74. Paragraphs 1 through 73 above are incorporated herein by reference.

75. The above-named individual person defendants unlawfully agreed together to engage in an unlawful effort to prevent the exposure of the unlawful actions and unlawful sexual predilections of Jerry Sandusky i.e. to cover-up and not disclose or take actions against Sandusky to the great detriment and injury of the plaintiff. During an investigation conducted by the Honorable Louis Freeh the defendant Wendell Courtney asserted his Fifth Amendment rights to protect himself from criminal liability and to further the civil protection for the other defendants as well.

76. The individual person defendants engaged in an unlawful civil conspiracy to permit and allow Jerry Sandusky to sexually assault innocent children and eventually the plaintiff all in an unlawful plan to protect the reputation, financial well being and public image of PSU and the Second Mile.

Wherefore plaintiff demands judgment of the above-named defendants for the state tort of civil conspiracy together with damages for pain and suffering, humiliation and embarrassment, emotional distress, punitive damages against the

individual defendants, fees, costs, attorneys' fees, and such other relief as may be deemed appropriate.

## COUNT VI

### Plaintiff against All Individual Person Defendants for the Intentional Infliction of Emotional Distress

77. Paragraphs 1 through 76 above are incorporated herein by reference.

78. The above-named individual person defendants ratified and assisted Sandusky in assuring his access to innocent children for years after they knew and were aware of his predatory sexual practices. Upon information, during this period of time the "Executive Director" of Second Mile was the wife of one of the defendants herein. The "Executive Director" appears to have been named by title only however in Freeh's report. If so this person remains a potential defendant in this action also.

79. Sandusky assaulted the plaintiff as he did others abusing their vulnerability and their role as invitees to the Second Mile program.

80. Sandusky's assault upon the plaintiff in fact did great emotional distress and harm upon him in violation of his right under state law to be free of such unlawful assault.

Wherefore plaintiff demands judgment of the above-named defendants for the state tort of the intentional infliction of emotional distress together with damages for pain and suffering, humiliation and embarrassment, emotional distress, punitive damages against the individual defendants, fees, costs, attorneys' fees, and such other relief as may be deemed appropriate.

Respectfully Submitted,

s/Don Bailey
Don Bailey, Esquire
Attorney ID 23786
4311 N. Sixth St.
Harrisburg, PA 17110
717-221-9500
717-221-9400 Fax
AdrienneMamma6@aol.com